IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MASTER PAINT INDUSTRIAL          )
COATINGS, INC.,                  )
                                 )
            Plaintiff,           )
                                 )
v.                               )          No.  05-1270-WEB
                                 )
PACIFIC INSURANCE COMPANY,       )
LIMITED,                         )
                                 )
            Defendant.           )
_____)

**Memorandum and Order**

        This lawsuit stems from a severe ice storm that hit central Kansas on January 4, 2005.

The storm resulted in widespread electrical outages, including in the Newton, Kansas area.

Plaintiff Master Paint Coatings has a plant located in an industrial park in Newton.  Many of the

paint products made by Master paint are water-based products.   As a result of the lack of

electrical service from the January 4 storm, the temperature in the Master Paint plant dropped to

the mid-teens, and many of the water-based paints in the plant froze and were ruined.

        At the time of the storm, Master Paint had a commercial insurance policy with Pacific

Insurance Company, Ltd.  The policy contained an exclusion for loss caused by a power failure if

the failure occurred away from the premises.   Conversely, coverage was provided for a loss

caused by power failure if the failure occurred on the premises.

        The matter is now before the court on defendant Pacific Insurance Company's Motion for

Summary Judgment.

        I.  *Statement of Uncontroverted Facts*.

        A.  Defendant's Statement.

        1.   Master Paint Industrial Coatings is a paint manufacturing company located in an

industrial park at 1701 S.E. 9th Street, Newton, Kansas, 67114.

        2.  The electricity to the Master Paint plant went off during an ice storm which commenced

on January 4, 2005.   There were no unusual noises, booms, or explosions at the time that the

electricity went off.

3.   The electricity occasionally flickered on, but primarily was off for seven days from January 4.

4.   By the second day, January 5, the temperature inside the Master Paint building had dropped to 17 degrees Fahrenheit.  Master Paint's water-based products froze and were ruined.

5.   Robert Whitley is manager of the Newton division of Westar.   He is the most knowledgeable person at Wester about the power outage in Newton resulting from the ice storm.

6.   According to Whitley, the ice storm of January 4, 2005, was the worst ice storm Westar had ever encountered.  They brought in crews from 30 other states to help restore electricity.

7.   The Newton division of Westar encompasses a fairly large geographical area.  It took seven to ten days to restore electricity to the core area of the division and, in some areas, it took as long as three weeks.

8.   Master Paint was on an electrical circuit with 1,023 other customers.   This circuit covers an area encompassed by East 1st Street to S.W. 14th Street and Elm Street to Spencer.

9.   According to Westar records, electrical service was intermittently off and on for this circuit on January 4, 2005, but from 3:50 p.m. on January 4, 2005, to 4:13 p.m. on January 10, 2005, electricity was off for the whole circuit, all 1,023 customers, and for the entire geographic area encompassed by East 1st Street to S.W. 14th, and Elm to Spencer.

Notwithstanding Westar's records, plaintiff has provided affidavits from officers of two companies located in the same industrial park and on the same electrical circuit as Master Paint. According to the affidavit of Steve Wells, owner of Mid-Continent Industries, Inc., his business had electrical power on January 4, 2005, from 7:30 a.m. until 12:00 p.m.; on January 6, 2005 from 7:30 a.m. until 11:00 p.m.;  and on January 7, 2005 it had electrical power the entire working day. According to the affidavit of Daniel Hirschler, vice-president of Continental-Agra Equip, Inc., a company located just south of the Master Paint plant, his business had electrical power on January 4, 2005 from 7:00 a.m. to 12:00 p.m.; on January 5 it had power the entire workday; on January 6 it had electrical power from 7:00 a.m. until 12:00 p.m.;  and on January 10 it had electrical power for all of the work day.

10.   The electrical service to Master Paint comes from an overhead line which crosses South Spencer Road and then goes to a pole on the northwest corner of the property.  From the pole point on, service to the building is through an underground line.  Whitley does not remember having problems with the underground line during this ice storm.

11.   After the current dispute arose, Whitley personally inspected the electrical lines at the Master Paint location, but did not find any indication of damage from the ice storm, or of repairs having been made.

Plaintiff has provided an affidavit of Forouhar Vandat, the president of Master Paint, who states that sometime during the period of power outage from January 4 to January 10, he saw an electrical repair crew working on the power line where it connects to the pole on the Master Paint property.  The workman was lifted up to the top of the pole by means of a lift bucket truck.

12.   If there was a power outage at the Master Paint facility, it should not have shut down the whole circuit, according to Mr. Whitley.  He testified that the whole circuit was shut down, which in his opinion suggests it is more probable than not that the problem causing the electricity to be off at the Master Paint plant was off-site, rather than on-site.

As indicated above, plaintiff has cited evidence that the whole circuit was not shut down for at least some portions of January 4, 5, 6, 7, and 10.

13.   At the time of the ice storm, Master Paint was insured by a policy issued by Pacific Insurance Company, Ltd.  The policy (Commerical Property Policy No.  ZM0037184) included an exclusion which provided in pertinent part:

> We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss....
>
> *   *   *
>
> e.  Utility services.
> The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.  Failure includes lack of sufficient capacity and reduction in supply.

B.  Plaintiff's Statement of Additional Facts.

1.  Because of the ice storm, there were at least two ways plaintiff could have lost power

to its facility.  One was if the main power line running parallel to Spencer Street lost power.  The other was if the "slack span line," which runs from the main Spencer line over to plaintiff's facility, failed.

2.  Mr. Whitley testified he could not be certain which of these caused the blackout, but in his opinion it was more probable that the problem was off-site.

3.  During the power outage, electrical crews using a bucket truck worked on the "slack span line" at the point where it connected to a power pole located on plaintiff's premises.

4.  In forming his opinion, Mr. Whitley relied in part on Westar Energy's documents pertaining to the power failure.  He also inspected the pole on the Master Paint premises.

5.  One of Westar's records from the outage indicates that all 1,023 customers on this circuit were without power from January 4, 2005 at 3:50 p.m. until January 10, 2005 at 4:13 p.m. Another Westar record, however, indicates that 264 customers on this circuit had power restored at 11:50 a.m. on January 6, 2005.

II. *Standards for Summary Judgment*.

The standards and procedures for summary judgment are well established and will not be fully repeated here.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In essence, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id. A disputed fact is "material" if it might affect the outcome of the suit under the governing law, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Under Rule 56, the moving party initially bears the burden of making a prima facie showing of the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law. *See Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998). This burden may be satisfied by pointing to an absence of evidence on an essential element of the non-movant's claim. Id. at 671 (*citing Celotex Corp. v. Catrett*, 477 U.S. at 325). Once the moving party carries this burden, the opposing party cannot simply rest upon the pleadings; it must come

forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Because it is the role of a jury to resolve any conflicts in the evidence, the court must examine the evidence on a motion for summary judgment in the light most favorable to the non-moving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995).

III.  *Discussion.*

Defendant Pacific Insurance moves for summary judgment, arguing the available evidence unquestionably shows it is more probable than not that the source of the electrical outage was off-site.  Defendant contends Mr. Whitley is the only witness in the case who is qualified to express -- and who has expressed -- an opinion as to whether the source of the problem was on-site or off-site.  Defendant notes that Mr. Whitley conceded he could not be sure of the source, but said under the factual pattern presented it was more probable than not that the source was off-site.

The determinative question here is whether the power failure "occurred away from the [Master Paint] premises" or whether it occurred on the premises.  When Mr. Whitley was asked this question directly, he candidly stated that he could not tell for certain, but he thought it more likely that the failure was off-site.  Whitley Depo. at 34.  He explained his answer in terms of probabilities and cited circumstantial evidence supporting his opinion.  For example, he noted that a power outage on the Master Paint premises would not likely have shut down electricity for the whole circuit, because for that to happen Westar's switches and "reclosures" would have had to fail, which he thought unlikely.  *Id.* at 35-36.  Although Mr. Whitley's opinion and explanation could certainly persuade a jury that the failure more likely than not occurred off-site, plaintiff has responded by pointing to other evidence that raises a genuine issue of fact for a jury to determine. For example, plaintiff has cited evidence that the power was not off for the whole circuit as was assumed by Mr. Whitley.  Plaintiff has provided affidavits stating that other businesses in its area had power on several days when the Master Paint plant did not.  Moreover, plaintiff has cited evidence that a repair crew was working on the "slack span" line on the power pole on the Master Paint premises during the power outage.  When Mr. Whitley was asked about this evidence, he

said it indicated a possibility that a crew might have been re-fusing a switch because a 50-amp switch on the pole "might have blown." *Id.* at 33. Viewed in the light most favorable to plaintiff, such evidence gives rise to a reasonable inference that the power failure at the Master Paint plant was due to a problem on the premises.

The question of causation is a factual matter that can be resolved on summary judgment only "where the facts of the case will support only one conclusion and reasonable minds could not differ as to that conclusion." *See Lloyd v. Quorum Health Resources, L.L.C.*, 31 Kan.App.2d 943, 955, 77 P.2d 993, 1002 (2003). In this instance, plaintiff has pointed to circumstantial evidence from which a jury could reasonably find by a preponderance of the evidence that the power failure occurred on the premises. *Cf. Farmers Ins. Co., Inc. v. Smith*, 219 Kan. 680, 688-89, 549 P.2d 1026 (1976) (Proximate causation in a proper case may be shown by circumstantial evidence; in order to sustain a jury verdict the evidence need rise to that degree of certainty which will exclude any and every other reasonable conclusion). Defendant has cited evidence supporting its position as well, but as the court noted previously, it is the function of a jury to resolve conflicts in the evidence. Accordingly, defendant's motion for summary judgment must be denied.

IV.    *Conclusion*.

Defendant Pacific Insurance Company's Motion for Summary Judgment (Doc. 22) is hereby DENIED. IT IS SO ORDERED this   5th   Day of December, 2006, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge